Brown & Pimpkins v. Service Employees Intl Union, et al. Our next case, Mr. Joy. Yes, Your Honor. Good to have you here, sir. Thank you, Your Honor. Pleasure to be here. With the plea to please the Court, I'm Greg Joy, counsel for Brian Pimpkins in this case. Your Honor, as I indicated to the clerk earlier, I have a little bit of a hearing issue this morning, so if you don't mind speaking up, I'd appreciate that. Thank you very much. Brian Pimpkins requests, Your Honor, that the Court reverse the decision of the District Court that had confirmed the arbitration awards, four arbitration awards, and find that three of those awards should be vacated under this Court's de novo jurisdiction, and then find that the fourth award should be deemed as moot and therefore should not have been confirmed in the first place. I'll address each of those awards individually. Overall, with regard to the first three awards. Well, with regard to the monies owed award, so-called, is there any dispute between counsel now as to whether that's been satisfied? Do we even need to argue about it? I have asked previously whether they would consent that it had been paid. We presented evidence that's in the record that it was actually paid twice, and I've never heard a response confirming that they. So it's still a live issue. It's still an issue, but we believe that the record is absolutely clear that it has been paid, and therefore that issue, the award is moot. And I'll quickly address that since you've already picked up on it. Oh, that's okay. You know, you do whatever. She's already picked up on it. I'll go ahead and address that. The wages award? The wages award, yes, sir. The $600 to the. The wages award you say has been paid. It has been paid. And it's moot. It is moot. The record shows it was actually paid twice, and the interest was. Well, once ought to be an option. It should have been, but our clients. But there's three of them that you don't want to. I'm sorry, Your Honor. There's three awards you don't want to comply with. There are three awards that we don't believe were appropriate, Your Honor. The reduction award, the driver award, and the vacation award. That is correct, Your Honor. And just briefly on the pay award, I would cite the court to the Derwin decision from the First Circuit, and then there are at least six other decisions that we've cited that indicate that when the judgment, the arbitration award has been satisfied, that in that case it is moot and there's no need for confirmation. Well, if there's a dispute about that, then, I mean, it isn't moot until somebody actually waves the white flag. Well, the courts in those cases indicated that where the records show that it had been paid, then there was no need for the court to proceed with confirmation. Well, if you all can stipulate it's been paid, that would satisfy the record. If you can't, that would be up for confirmation as well, or we'd have to rule on it. Well, I guess the court has to make a determination that it was actually paid if it's not stipulated. Well, we don't decide facts. You all have to give us the facts. The record has to give us the facts. You're correct, Your Honor. And we set out in the record that the payments were made by the employer, by Brown and Pitman. Well, we'll ask him about it when he gets up here. No, it's specified in the record. There is in two places that there are sets of the checks showing that the payments were, in fact, made. But let me go back to the other awards, because those are the ones that have more significance with regard to this appeal. And those are the reduction in hours award, a reduction from eight to seven hours, the vacation pay award, and the driver's pay award. Your Honor, we maintain that all three of those awards should have been vacated by the trial court, but they should be vacated here because the arbitrator did not comply with the terms, the clear and unambiguous terms of the collective bargaining agreement when he failed to enforce the specific terms that prevented him from doing exactly what he did in those cases. Now, a brief bit of history. Brandon Pipkins entered into the custodial services contract at Fort Belvoir in September of 2012. In the fall of 2012, the Army notified Brandon Pipkins that it was going to cut its services by approximately 14% and reduce its pay monthly from about $168,000 to $154,500. Brandon Pipkins tried to work with that with the forces that it had at that time, but was not able to. And so in January, mid-January of 2013, Brandon Pipkins notified its employees that the full-time employees' hours would be reduced by one hour from eight to seven hours. They did not want to lay off anybody. They wanted to try to keep their staff as best they could. The union filed a complaint with the NLRB because at that time there was a dispute about whether or not a collective bargaining agreement applied. Brandon Pipkins was a follow-on contractor to another contractor. They had not entered into the contract on the original cycle for that particular contract. So that dispute with regard to the eight to seven hours went to the NLRB, and a settlement was reached that Brandon Pipkins would pay for that hour from January of 2013 until May 17th of 2013. And the significance of May 17th was that at that time a new collective bargaining agreement was entered into with a new management rights clause that specifically addressed this issue. Brandon Pipkins included that management rights clause in Article 3 of the collective bargaining agreement for that specific reason. And Brandon Pipkins ultimately paid the settlement amount for the January to May timeframe. The union on May 29th gave notice of a grievance, and then on June 7th gave notice that they were appealing the employer's denial of the grievance concerning the reduction from eight to seven hours. It's our position, Your Honor, that the arbitrator failed to enforce clear and unambiguous terms of the management rights clause. And that clause specifies very clearly in Section 1 that the employer has the right to set the schedules of work and to assign the work under Section 2 that they have the right to adjust the schedules of work. And under Subsection 3, even more specifically, that in its sole and exclusive judgment and discretion, they have the right to set the starting and quitting times and the number of hours and shifts to be worked. They clearly had the authority. Even further in the management rights clause, the very last sentence states, such managerial rights shall not be the subject of any provision of the agreement or of mandatory bargaining between the employer and the union. That clause could not be overridden, was not subject to another provision in the collective bargaining agreement. Article 11 of the collective bargaining agreement further contains the disputes procedure, and it specifically states that in no case should the arbitrator add to, deviate from, detract from, or alter in any way the provisions of the agreement. So the arbitrator did not have the authority, either contractually or by the common law, as this Court has interpreted it, to change the terms of the agreement and to reduce the effect of the management rights clause. But that is precisely what he did. He determined in his award that the reduction of one hour was inappropriate because impliedly the Article 6 dealing with the hours to be worked by employees was engrafted onto the management rights clause. Instructively, what he did in his decision, he references the first two, he references Section 2 and the beginning of Section 3 with regard to the management rights and then ignores the provision at the end of the management rights clause that specifically says he cannot, that the management rights clause is not subject to any other provision in the contract. Therefore, he did precisely what the management rights clause precluded him from doing and he never even acknowledged that that clause was in the last portion of that clause that prevented him from doing that was in the agreement. Therefore, he clearly exceeded his authority because his award does not draw from the essence of the collective bargaining agreement that specifically prevented him from doing exactly what he did in this case. Well, it draws from it in part, I guess, doesn't it? Excuse me, Your Honor. It draws from it in part. You're saying he didn't construe the entire agreement. I don't think it draws from any part of the agreement. Well, he's looking at the language that says the working hours shall be 40 hours per week and he's identifying an ambiguity in that conflict in that language with respect to the employer's ability to set the working hours. So that's okay, I guess. But then you say there's this overriding provision in the agreement that says you can't do that. Yes, Your Honor. And I would argue that he misinterpreted Section 6 anyway because it specifies in the very first sentence that a full-time week is at least 35 hours, 5 hours a day, 7 hours a day, 5 days a week, which is what we were paying for anyway. But the very next sentence says that full-time employers will work 8 hours, 48 hours. And there is some inconsistency in that clause. We don't have to get to that point, and he never should have gotten to that point, Your Honor, because it was clear under the Management Rights Clause that the other provisions, that that clause, the Management Rights Clause, is not subject to any other provision, including Section 6 of the CBA. So that clause could not be used. Why is that clear? Excuse me. Mr. Joy, why is it clear that the Management Rights Clause doesn't have to be read together with the other provisions of the CBA? Because if you read the last sentence of Section 3, subsection 3 of the Management Rights Clause, it specifically provides, Your Honor, that such managerial rights shall not be the subject of any provision of this agreement. Well, the managerial rights, but the hours of work, were the subject of the CBA, were they not? And if you look at the beginning of subsection 3, it defines the setting of the starting and quitting times and the number of hours to be worked as part of the managerial rights. It talks about all statutory and inherent managerial rights, prerogatives, et cetera, not limited to the rights in accordance with its sole and exclusive judgment and discretion to hire employees to set the starting and quitting times and the number of hours. Well, then the rest of the CBA goes out the window, does it not? That's not correct, Your Honor. Why not? There are other provisions in the CBA that would not be effective. Well, Article 6 goes out the window, right? 6 would go out the window if it was in conflict. Yes, Your Honor, that is correct. But other provisions would not go out the window, Your Honor. I believe that there are numerous provisions that would not go out. The grievances provision would not go out. The seniority provision, the promotions provision, the uniforms provision, the health and safety provisions. Again, Your Honor, you have to consider the context in which the agreement was put together. The 8 to 7 hours issue had already come up. The employer was trying to protect itself and be allowed to do exactly what it had done, and that's why it changed the management rights clause to allow for that reduction for the employer to have essentially exclusive and sole control over how the hours were going to be set. That was the whole purpose of the management rights clause. And this Court has recognized in a number of cases that where the arbitrator fails to comply, fails to apply the clear and unambiguous terms of the collective bargaining agreement or the contract, then the arbitrator's decision is invalid and should be overruled. And I point specifically to the Mountaineer Gas case where, dealing with a similar management rights type clause, the Court found that the arbitrator had exceeded its authority in providing that the employer could not or was not allowed to terminate where the employee failed its drug policy because the arbitrator simply imposed his own view of how the drug policy should work and what the remedies should be for that. I would also point out that Judge King, in his decision in the Patton case, found that an arbitrator cannot override the terms, the clear and unambiguous terms of a collective bargaining agreement or, in that case, it was a contract, but cannot override the clear and ambiguous terms of a contract and impose his own view of what the terms should be. And here again, we have a clear and unambiguous management rights clause that specifically does not allow the arbitrator to make the determination that he did, that this other term should be engrafted onto the management rights clause when it specifically provides that it may not be engrafted onto that clause. Additionally, Your Honors, with regard to the reduction in hours, we spell out in our briefs that the arbitrator recognized that the union had failed to timely submit the grievance in that case. It was supposed to be submitted within three days, three calendar days. It was submitted 12 days later. It was also supposed the appeal from the denial of the grievance was to be made within 10 working days. It was not made until approximately 15 or 16 working days after the grievance had arisen. From the May 17th date, the arbitrator expressly recognized that, but then said, I find that there was a continuing violation. I'm not going to impose the restrictions of the clause, even though the spuse clause specifically says that if the grievance is not timely submitted, if the appeal is not timely submitted, then the grievance is waived. The only analysis he needed to make was did they timely submit or not, and he went beyond that to find that they were not timely, but then tried to find an excuse to make it. I mean, that analysis was a result of the nature of the grievance, the fact that this was an ongoing violation of the reduction in hours. It wasn't a single specific grievance. And what's unreasonable about that, about finding that this was, in fact, a continuing violation subject to a new date for filing a grievance each and every time it occurred? Because a new issue had arisen once the collective bargaining agreement was entered into, and the parties had already settled the other issue beforehand, so there was not a continuing violation at that point because you had a whole new agreement that defined the rights of the employer, again, with the management rights clause. And the arbitrator recognized that and accepted that the union was late in submitting its grievance. If I may, Your Honor, address the other issues very quickly. The issue of the reduction in hours also affects the vacation pay and the driver's pay issues because the arbitrator in that case addressed both. If I may finish my thoughts, Your Honor. Go ahead. The vacation pay and the driver's pay awards were both dependent on the holding that an additional hour should be paid for the drivers and for the vacation pay. As to the vacation pay, the arbitrator actually agreed with the calculation by Brown and Pipkins of what the vacation pay time should be, even though, again, there was an untimeliness issue that's addressed in our briefs. And with regard to the driver's pay, the arbitrator also took a clear and agreed definition of driver as someone who had to be either a lead custodian or working or driving a company car. They were not lead custodians undisputedly. They were not driving company cars and said that that definition shouldn't apply, and they overrode the definition, and that was improper. And, again, taking the clear and unambiguous terms and not drawing his essence from it. With that, Your Honor, we appreciate it. I'll reserve my rebuttal. Thank you. Thank you, Mr. Joy. Mr. Storm? Good morning, Your Honors. My name is Andrew Strom. I represent the Cross Appellant Service Employees International Union, Local 32BJ. Just on this issue of the management's rights clause, I think Judge Keenan and Judge Diaz, you're both absolutely right. The employer wants you to read this clause as though it overrides almost the entire collective bargaining agreement, and that's clearly not true. It wasn't the intent. The employer said, oh, well, we wanted to bargain for something that would let us have reduced the workday, but the hours of work provision is the provision governing the workday, and they didn't get what they wanted. At a minimum, the point is you don't need to resolve, you don't need to interpret the contract, but what's clear is that the arbitrator here did interpret the contract. Mr. Strom, Mr. Joy said that there was a history here that this agreement was intended specifically to avoid the very same issue that had occurred in the previous bargaining session. And that's just clearly not true because if that were true, it would have been addressed in the hours of work provision, right? In other words, if the employer had accomplished at the bargaining table what Mr. Joy claims they did, you would have seen that in the hours of work provision. There would have been some agreement that said the employer may, full-time workers may work, may work a seven-hour. They would have taken that sentence out. I mean, the sentence is here, right? The work week for all full-time employees shall be 40 hours per week, eight hours per day, Monday through Friday. I mean, it was for the arbitrator to decide what did that sentence mean. And the employer has never claimed that that was a clerical error, that that sentence was intended to be omitted, but that there was some kind of clerical error and that sentence never got omitted. I mean, that sentence is in the agreement and it was the arbitrator's job to reconcile what does that sentence mean and what's it doing here in the collective bargaining agreement. And so that's what the arbitrator did. The arbitrator looked at what that sentence, looked at that sentence and figured out what does it mean. And the employer, whenever they talk about the management's rights clause, they always omit the mention of the sentence right before this, such managerial rights shall not be subject to any provision, where that sentence ends by saying that the employer, you know, refers to employers exercising certain rights not in conflict with the expressed provisions of the agreement. And that's, of course, a natural way to read a management's rights clause because otherwise, you know, and they've essentially conceded this in their opposition reply brief, that otherwise they could override the wage provisions in the agreement as well. I mean, that's how they read this agreement. They read this agreement as, you know, three-quarters of it is illusory because of the management's rights clause. And that was something clearly that an arbitrator had a right to look at and say, no, I'm not going to read the agreement that way. If I could turn to our cross appeal, I think that, you know, the Supreme Court has been saying with increasingly emphatic language that And that's what's going on here. This employer is coming in here. They've agreed to arbitration. Arbitration is supposed to be a speedy and informal way to resolve disputes between unions and employers. It's long been recognized that arbitration is a substitute for the right to strike and that unions trade off the right to strike for the right to have And this court in United Food and Commercial Workers Local 400 versus Marble Poultry recognized that and said, look, when an employer comes in and tries to make an argument about the merits, we're going to view that as presumptively unjustified and we're going to award attorney's fees. And that's what should have happened here is the union should have been entitled to recover its attorney's fees to get the benefit of that. Did you make a motion for attorney's fees? We did make a motion for attorney's fees. We made it as part of our motion for summary judgment. This court said nothing about it, and then you did nothing about that. Well, you know, we frankly would have thought it would have been insulting to go back to the – I mean, it was very clear it was briefed by both sides in the district court. You never asked for a certain amount, did you? Right. We didn't do that. I mean, and as we – What's the court supposed to do? Well, I think what the court is supposed to do is what the court does in a lot of these cases and what Rule 54 contemplates, which is bifurcating the proceedings, right, to say – Did you ask for that? Well, we didn't specifically ask for it, but we asked for attorney's fees. And in the district court, the employer never raised this argument. The employer didn't at a time we would have been able to correct it. They didn't say, oh, there's no amount. That's why you should deny the attorney's fees. They just said you should deny the attorney's fees. And we cited a lot of cases in our reply brief. It talks about how courts handle this. And, you know, courts can – I mean, bifurcation is a logical way to do it. Why didn't you file a motion to reconsider? Well, we could have filed a motion to reconsider. But why didn't you? Right. You can't come up here and ask us to overrule a court that you didn't give a shot at the issue. You've got to give a district court a chance. We're an appeals court. I get that, Your Honor. And I think we have a couple of responses. Motions for reconsideration, in my experience, are highly disfavored. I don't see it as a motion for consideration. It was a motion for consideration. Right. You needed to make a motion for attorney's fees. I mean, as I said, you know, this was briefed by both sides. And we thought, you know, frankly, it would have been insulting to the district court judge to say, oh, maybe she didn't read our papers. We were asking for attorney's fees. Judge, we've asked for attorney's fees. The parties have briefed it. Are you going to be hearing it now, or would you like to set a separate hearing date? There was no oral argument, Your Honor. Or writing a letter saying the third issue, does the court wish to set a hearing date? If so, would you like us to get together on an agreed date? What's insulting about that? I mean, all of those are things that I suppose we could have done in hindsight. But, you know, I guess we felt like the judge had made his decision that he wasn't going to award the attorney's fees through his silence. No, he didn't say it. He said it through his silence. And he didn't grant them. And so we viewed that as the judge. Maybe it was an oversight. Maybe he relied on some law clerk. No, it very well may have been an oversight. I mean, that's certainly possible. I mean, just, you know, out of respect for the court, I guess we didn't want to. Respect for the court is to give the court a chance to rule. I mean, that's what. I don't think courts get upset. You tell them that you overlooked an issue. Some judges are more prickly than others. That's what they're there for. They'd rather you tell them than wait and have us send it back or something. Right. I mean, I'm not actually. You might want to do it rather than come up here and lose your right. Let's have us say you waived. Right. Which is what they say. You waived it. But, I mean, I think that was our view was, you know, the judge had all the information. He had briefing from both sides and, you know, wrote, you know, a fairly truthful opinion. I think because he viewed the employer's case, you know, as, you know, pretty insubstantial. Well, now when the judge didn't know how much you were asking for, isn't that really? I mean, you left out such a big part. Why couldn't the judge have just said they haven't even said how much they want? I don't know if they want $100 or $100,000, and I'm just going to wait until I hear from them again. Well, I mean, he might have done all of those things. I mean, you're right. Nobody knows what was in the judge's head. I mean, certainly the judge could have said to us, you know, I'm not going to consider your motion for attorney's fees at this time. You can renew it at the end. I mean, we would have been up here, it would have been a different case, if he had denied it on the grounds that we hadn't, you know, made an estimate of the fees, and then we could have a discussion about whether that would be an abuse of discretion or not. So you're saying it's the judge's duty to bring it up, even if counsel sits back and says nothing or does nothing? I mean, I'm not – I guess what I'm saying is we filed our motion, we asked for it, both sides briefed it, the judge made a decision. I mean, it's true that – I mean, that the judge didn't, you know, specifically deny it, and I guess we could have – Well, you never even asked him, told him what you wanted, how much. Right. Well, maybe you don't have a final order. Maybe we don't have any jurisdiction for this appeal because it wasn't finished. Well, I think we have a final order on the merits. Well, that's what I'm – well, it didn't – the final order is the case. You say the judge didn't rule on part of the case. Well, or he ruled on it, you know, sub silentio. I mean, I, you know, the – I mean, you know, we view it as our – we didn't get – you know, we asked for attorney's fees, we didn't get them. And, you know, that's our view of what happened. I suppose, you know, I mean, all of those are valid points about what we might have done. You wouldn't always ask for attorney's fees. They spell out how much work they've done, what the hourly rates are. I mean, you charge a higher rate than somebody to have the right to brief or you might have had a paralegal or – Everything in there. They want attorney's fees and cost. Is that what you're entitled to here, attorney's fees and cost? Right. In my experience – You didn't tell him what your costs were. How would he know how many – what you spent? Right. I mean, in my experience, sometimes it goes both ways. I mean, sometimes you ask for attorney's fees up front and then the district court says, yes, you're entitled to attorney's fees, you know, make a motion for the amount. There's a problem here that there's a rule that specifically addresses how to deal with the issue, and you all just flew right past that. Well, Your Honor, with due respect, we didn't totally fly right past it because we did – I mean, Rule 54 just says an outer limit, right? You have to make a motion within a certain amount of time. Well, it says you have to state the amount sought. Right, right. And so the question is, by failing to state the amount sought, is that enough to deny us? And we cited numerous cases in our brief where courts have said that's not enough to deny it. I mean, you know, so that's our position is that, especially given the fact that Rule 54 specifically contemplates – You got a case from this circuit that says you don't have to comply with Rule 54? Neither way. There's no – we didn't find any authority in this circuit one way or the other that speaks to this issue. And so we – you know, there are cases saying – We're usually sticklers for the rules. Right, but the rule, Your Honor – We like rules. The rule, Your Honor, does contemplate that the district court can bifurcate the proceedings, right, can rule on liability first and then follow that with, you know, getting into the amounts. So I guess that's, you know, what we were asking for in this case. I mean, you're certainly right that, you know, this court could, you know, give a more clear instruction about what, you know, what one needs to do to preserve the attorney's fees issue. But we think that, you know, this is the substantive case where attorney's fees would be appropriate. And anyway, so that's – just very quickly on the wages paid issue, which is a very minor issue in this case. But I just want to say, you know, there is this – there is a lingering dispute about it. You're talking about the wages award? Yeah, that small – Do you agree with him? We don't agree with him. You don't agree with him. Just to be clear – So we don't have a stipulation. Right, and just to be clear, that award allows for an offset. So it's not like we're trying to collect, you know, double collect. It's just that we wanted to have that award confirmed. You see that we have not the best relationship with this employer. And to the extent that there is a dispute about any of the amounts, we just wanted to, you know, sort of cross the Ts and dot the Is about whether that amount is actually paid. If you don't have any other – Can I ask you a question about this continuing violations doctrine? Sure. How do we get to a retroactive award? I mean, I can understand the – Right. I can understand the logic in concluding that the continuing violation obviates the need to comply with the deadline. But how does that warrant a retroactive award? Right. Two things, Your Honor. I mean, one is, as a practical matter, I'm not sure it matters here because, as counsel for the employer said, they had already paid that amount due to an NLRB settlement through the date of the collective bargaining agreement. But I think the answer as to whether the arbitrator has that authority or not I think is pretty clear. In Marvel Poultry, this court found that the arbitrator had authority to go beyond the terms of the collective bargaining agreement to give an award. And I think that the question is, here, just on the facts of the timing here, the – you know, it was strange because the collective bargaining agreement was retroactive, so there was no agreement in effect at the time that the hours were reduced. And in January, the arbitrator found that the oral request was made. And then this – the next step in the process, the union has 10 working days to file the written grievance. And that happened here. So, as we said in our papers, you know, had the employer made some argument about prejudice? Well, if we had known this issue, we would have done something differently. You know, then the arbitrator might have responded to that issue. But once the arbitrator finds that he has jurisdiction, the arbitrator, as we cite in numerous cases in our papers, has, you know, a lot of, you know, freedom to craft an appropriate remedy. And we think that that's what happened here. Thank you. Thank you, Mr. Strom. Mr. Joey. Your Honors, I'll try to address the attorney's fees very quickly and then go back to the other – rebuttal on the other issues. With regard to the attorney's fees, I think the Court has grasped that initially they did not meet the procedurally required burden of filing the Rule 54 D2 motion, including the dollar amount that they were claiming or a reasonable estimate within 14 days. There is a Fourth Circuit case on this. It is the Hoveman v. Colvin case that is cited in our brief, a per curiam decision from 2013, where Judge Wilkinson, Judge King, and Judge Floyd – Was it published? Excuse me? Was it published? It was per curiam, and I don't think it was published, Your Honor. Well, there's not precedent here. It may not be precedent, but I think it certainly is persuasive authority that the failure to comply with Rule 54 D bars and submit your dollar amount within the 14 days after the judgment, and this was a final judgment, and the failure to do that bars your ability to recover. I would also cite, and this is in our brief, there are two Tenth Circuit cases that I believe are published, the King and the Gash case. Actually, Gash may not be published. I believe King is. And then a Gutman case from the Second Circuit that have all held the same thing, all cited in our brief. So it is absolutely clear that the courts have recognized, and the rule is absolutely mandatory. It says must include that information, and the failure to do so bars the right to recover. There is a Ninth Circuit case where the court remanded, but in that case, the court remanded with direct instructions that they had to follow Rule 54 D2 in determining the attorney's fees. Here, they simply failed to give the notice that was required of what the amount was they were claiming. That was fatal to their attorney's fees claim. That's absolutely clear, and as the courts recognized, they had multiple opportunities. They could have filed a request for reconsideration. They could have filed a new motion. They did none of that. They gave no notice whatsoever of the amount within the time required. They're barred. And with regard to the heart of the issue, the justiciability, if there is any justification for an attack on the award based on whether it met the essence of the award, this court and other courts have recognized that there is no basis for attorney's fees in that situation. And as I pointed out in my initial argument, all of the bases that we assert seeking to vacate, the three awards we seek to vacate are based on the failure of the arbitrator to draw his decision from the collective bargaining agreement terms, the management rights terms, or the dispute procedure with regard to the timeliness issues, or the letter of understanding with regard to the definition of who a driver is. And I cite the court to the media general case and to the Marvel Poultry case that Mr. Strom referred to earlier, both of which say if there is any justification whatsoever, any legal authority to support the position, then the court should not grant attorney's fees if the argument is going to the essence that the arbitrator did not draw from the essence of the collective bargaining agreement. Back, Your Honors, with regard to the primary issues and the bases for vacating the award, Mr. Strom contends that it didn't make any sense that the management rights clause was trying to address the issue of the eight to seven hours. It makes complete sense. If you look at it, it is replete with references that the employer has the right to control the schedules, to set the hours, to set the starting and ending days for work. Clearly, that was the intention of that clause. And even further, the intention of the last sentence of that clause, which I believe Mr. Strom indicated the arbitrator may have addressed, he never addressed. If you look at his decision, he completely ignores. He recognizes parts of the management rights clause, but never addresses the last sentence that expressly says he has, that he cannot, that the other proportions of the collective bargaining agreement are not subject to, that the, excuse me, that the management rights clause is not subject to the other provisions of the collective bargaining agreement. So that clause was put in to override any contradiction to the right of the employer to make that determination. And again, with regard to whether the arbitrator's underlying decision, he clearly never even looked, or at least he never indicated that he had looked at that last sentence and certainly did not try to interpret it. He simply ignored it. And that is improper, and the failure to apply that sentence is fatal to his decisions regarding the reduction in hours, the vacation pay, which also relied on the eighth hour, and the driver's pay, which also relied on the eighth hour. And finally, Your Honors, with regard to what is the standard, when the arbitrator, may I, please, Your Honor, when the, thank you, when the arbitrator fails to go to, his decision fails to go to the essence of the collective bargaining agreement, then the courts have a right and a duty to explore that. And if he fails to go to the, follow the essence, or his decision failed to follow the essence of the management of the collective bargaining agreement, then the award should be vacated. I appreciate that, Your Honor, for no further questions. Thank you very much, Mr. Joy. Mr. Strom? I have two quick points about. I mispronounced your name a while ago, and I apologize. Oh, thank you. I just have two quick points to make about our cross-appeal. As far as we know, there's only a single published circuit court case that addresses this issue of whether otherwise proper or motion for attorney's fees is waived by failure to estimate the amount of fees. And that's the Ninth Circuit case that we cite in our brief. The cases that the employer cited in its brief are either unpublished decisions or primarily cases that deal with. Unpublished decisions can be informative, though. We can take them into account. Right. To some extent. Or they're. But they're not controlled. And they primarily deal with late filing of motions for attorney's fees rather than a motion for attorney's fees where the only thing that's missing is the estimate of the fees, you know, which is significant because, you know, the estimate of fees at the time you file the motion is nothing more than an estimate anyway because obviously there's going to be subsequent, you know, proceedings in the case that will affect the actual total. So and the courts, you know, in the cases that we've cited have pointed out that there is a strong preference for deciding these issues on the merits rather than because of some, you know, procedural oversight or infirmity. So this is the fourth circuit. I mean, here would be basically writing on a clean slate, but would also be potentially creating a circuit split if it rules that the claim is waived due to failure to estimate the amount of the fees. So that's all we have on that. Thank you very much, sir. Thank you.
judges: Robert B. King, Barbara Milano Keenan, Albert Diaz